## ▎Shaeffer *against* Child.

The assignee of an insolvent debtor may dispose of his effects so as to make the most of them ; he may consequently dispose of a doubtful security at a price supposed to be fair, though less than the nominal value.

The lien of a judgment against the estate of an insolvent debtor is not indefinitely prolonged by the twelfth section of the act of 1814.

A judgment upon a *scire facias post annum et diem* is *quod recuperet.* An expired judgment, thus revived, binds as a new and an original one, and consequently, only what the debtor had at the time of revival.

The proceeds of sale by execution, of the resulting interest of an insolvent in his assigned estate, under a judgment subsequent to his discharge, go to the execution creditor, and not to the assignee of such debtor, for the benefit of his general creditors.

ERROR to the common pleas of *Lancaster* county.

William Child, against Charles Shaeffer and Nathan C. Schofield, Field & Forbes, and Philip Snyder.  Issue directed by the court to try the right to the proceeds of a sheriff's sale of the property of Matthias Rauch.  The following facts appeared, upon which each of the parties, plaintiff and defendants, claimed the money.

The first judgment on record was that of David Muma, which was entered the 7th of July 1815, and revived by *scire facias* on the 29th Nov. 1827.  David Muma was discharged as an insolvent debtor the 5th of Feb. 1816, and his assignee assigned the judgment to Shaeffer & Schofield the 22d of Aug. 1831.

Field & Forbes's judgment was entered 28th of August 1815 ; Philip Snyder's judgment was entered 22d of Sept. 1815 ; William Childs's judgment was entered the 2d of Oct. 1815, and revived by *scire facias* the 27th of Aug. 1827.  Upon this judgment a *fieri facias* was issued, which was levied upon the real estate of Matthias Rauch, and which, upon a *venditioni exponas*, was sold in January 1828, for 335 dollars.  This was the money in court for appropriation.

Matthias Rauch was discharged as an insolvent debtor on the 17th of February 1817, and made the usual assignment of all his estate for the benefit of his creditors, of which the real estate, sold as above stated, was a part.

The court below (Franklin, then President) was of opinion that none of the claimants was entitled to the money : that Shaeffer & Schofield were not entitled to it, because the assignee of David Muma had no power to transfer the judgment to them, and because the judgment had lost its lien : Field & Forbes were not entitled to it, because their judgment had lost its lien, and William Child was not entitled to it because his judgment had lost its lien ; and when the same was revived in 1827, the defendant, Matthias Rauch, had no estate upon which it could attach, he having previously assigned

[Shaeffer v. Child.]

it for the benefit of his creditors generally : but they were of opinion, and so instructed the jury, that the assignee of Matthias Rauch, when one should be appointed, would be entitled to have the money from the sheriff. But the jury found a verdict for the plaintiff, William Child. A motion was made by the other claimants for a new trial, pending which, president Franklin died. The motion came on for argument before Collins, President, who being of opinion that the verdict of the jury was in accordance with the rules of law, refused to set aside the verdict. This writ of error was then sued out.

*Frazier* and *Champneys*, for plaintiff in error, cited, *Stroud's Purd.* 511 ; 5 *Watts* 68 ; 1 *Penns. Rep.* 207 ; 8 *Wend.* 426 ; 3 *Rawle* 199 ; 3 *Yeates* 520 ; 6 *Binn.* 391.

*Rogers* and *Jenkins,* contra ; stopped by the court.

The opinion of the Court was delivered by

GIBSON, C. J.—Shaeffer and Schofield would not be debarred from the fruit of Muma's judgment by the supposed inability of his surviving trustee to pass the ownership of it. The assignees of an insolvent debtor must not be restrained by any thing less than express enactment, from making the most of his effects ; and they may consequently dispose, at discretion, of a doubtful security, at a price supposed to be a fair one, though less than the nominal value. To preclude them from benefiting the fund by the temporary rise of a depressed article, for instance, in the stock market, would be a senseless deprivation of chances that might fall in their way. If, however, they are to be postponed for other reasons, the error in this respect cannot be material ; and it is therefore necessary to advert to the question of priority at the time of the sale. When Rauch, the debtor, was discharged, the judgments against him still retained their liens ; and these are supposed to have been indefinitely prolonged by the twelfth section of the act of insolvency, passed in 1814, which provides that the land and goods shall remain subject to existing liens by mortgage, judgment or execution ; and it is certain that when the land is instantly converted, incumbrances are to be first paid in the order of their priority. The clause however is not a creative, but a protective one. Its purpose is not to enlarge, but to preserve. The conversion of an insolvent debtor's land seldom follows the assignment with the rapidity of a sale, after seizure on execution ; and the same inconvenience is experienced from stale liens by purchasers and creditors, whether the title be vested in trustees or retained by the debtor. At the date of the act of 1827, then, the liens had expired, and the assignees held the land discharged and for the benefit of the general creditors ; and how can that act be suffered to impinge on an intermediate conveyance by the doctrine of relation ? Its object was avowedly to continue liens then in force, not to restore those that had lost their hold ; for it could not continue what did not

VII.—H 2

[Shaeffer v. Child.]

exist.   Then what was Child's judgment when subsequently revived by *scire facias*?  It was awakened to a new existence, not to the continuance of an old one.   With us, judgment on a *scire facias post annum et diem* is *quod recuperet*—not, as elsewhere, an award of execution ; and our *scire facias* to continue, was held, in the case of Mason's Estate, 5 *Watts* 464, to partake of the same quality.   An expired judgment, thus revived, then, binds as a new and an original one, and consequently only what the debtor had at the time.   What had Rauch, the debtor ?   He had parted with his land to trustees for the benefit of his general creditors, and had consequently disabled himself from affecting the title to it by a conveyance, or even an involuntary incumbrance, further than regards the resulting trust of the residue, if any, which the law implies for him, and which was considered, in Sommer *v.* Sommer, 1 *Watts* 304, to be such an interest as might be bound and sold.   So much, and no more, was sold, if any thing was, on Child's execution ; but not for the benefit of the general creditors.   The money made was the produce, not of their estate, but of a contingent interest of the debtor ; and that alone passed to the purchaser.   According to the principle of Stauffer *v.* The Commissioners, 1 *Watts* 301, even the lien of the execution would give the seizing creditor the proceeds, as of a chattel not bound by a prior lien.   But Child's judgment of revival bound the insolvent debtor's contingent trust estate ; and he is entitled to the fruit of it.   There is nothing in the material parts of the direction contrary to these principles ; and the assignment of errors is not sustained.

Judgment affirmed.